UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

LACHANDRA WILLIAMS,

       Plaintiffs,

vs.

ACADEMY OF COSMETOLOGY, INC.,
d/b/a The Salon Professional Academy,

       Defendant.

_____/

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff LaChandra Williams (hereinafter "Plaintiff") sues the above Defendant, Academy of Cosmetology, Inc., d/b/a The Salon Professional Academy (hereinafter "Defendant") for race discrimination, retaliation, and hostile working environment based on race, pursuant to Title VI of the Civil Rights Act (42 U.S.C. § 2000d), Title VII of the Civil Rights Act (42 U.S.C. § 2000e), and 42 U.S.C. § 1981, and alleges as follows:

**PARTIES**

1. Plaintiff was employed by Defendant and enrolled in a cosmetology program run by Defendant from June 3, 2019 to February 28, 2020. During that time, and during all times material hereto, Plaintiff worked and attended classes at Defendant's office, located at 1700 W. New Haven Avenue, Suite 540A, Melbourne, Florida 32904.

2. Defendant is a Florida Corporation that runs a cosmetology program which enrolls students, such as Plaintiff. As a part of the program, these students are required to work at a for-profit salon also owned and operated by Defendant. At all times material hereto, Defendant maintained a principal place of business at 1700 W. New Haven Avenue, Suite 540A, Melbourne,

Florida 32904.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the Civil Rights Act and 42 U.S.C. § 1981.

4.   This Court has original and personal jurisdiction over this action because Defendant is engaged in business within the State of Florida, and the action complained of occurred in Florida.

5.   Venue is appropriate in the Orlando Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and the Local Rule for the United States District Court, Middle District of Florida 1.02(c) because the Defendant owns and operates facilities within Brevard County, and the unlawful conduct occurred within the Orlando Division of this Court.

## GENERAL ALLEGATIONS

6.   Defendant is a privately owned, for-profit corporation that operates at least two (2) separate enterprises: first, a cosmetology school, and second, a hair and nail salon.

7.   Defendant is regulated by the U.S. Department of Education, and pursuant to Title IV of the Higher Education Act of 1965, is a program that receives federal financial assistance.

8.   A large portion of the "curriculum" at Defendant's cosmetology school involves enrolled students, including Plaintiff, working as hair and nail stylists at Defendant's salon. Students, including Plaintiff, regularly worked at the salon, performing various hair and nail styling modalities on paying customers. Students, including Plaintiff, received compensation in the form of tips in exchange for their work.

9.   In addition to the "students" that Defendant utilized as employees for their salon, Defendant also employed numerous other individuals as secretaries, front desk workers, janitorial staff, and other positions essential to the proper running of a hair salon.

2

10. Defendant also employed administrative and teaching staff in conjunction with their cosmetology program.

11. Accordingly, Defendant was an employer of Plaintiff within the meaning of 42 U.S.C. § 2000e(b), in that they were engaged in an industry affecting commerce who had fifteen (15) or more employees for each working day in each of twenty or more calendar weeks.

12. In addition, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 2000e(f), in that she was employed by an employer to perform hair and nail services on customers in exchange for a fee paid to Defendant, and in exchange for any tips paid to Plaintiff.

13. Plaintiff is a member of a protected class within the meaning of the Civil Rights Act as an African-American woman.

14. Plaintiff began as a student, and consequently an employee, in Defendant's cosmetology program on June 3, 2019.

15. During her tenure with Defendant, Plaintiff was involved in several instances where Caucasian teachers and staff made racially denigrating and discriminatory statements and took racially discriminating actions.

16. On one such occasion, a teacher named Jessica Watson, who is a Caucasian woman, said to Plaintiff and another African-American woman that "Niggers ain't shit," in reference to a black man.

17. On another occasion, a male Caucasian teacher commented that he "didn't want to teach kinky hair," and said "white people don't want to see plastic on someone's head," while Plaintiff was performing a silk press for an African-American customer[1].

18. The hair styling methods and modalities taught by Defendant in their program were almost

---

[1] A "silk press" is a hair styling modality traditionally performed on afro hair, which involves wrapping the head in a silk wrap to effectively straighten it.

exclusively catered to white customers.

19. On September 17, 2019, Plaintiff filed a complaint with Defendant regarding these incidents. The complaint was submitted anonymously, as Plaintiff was fearful of retaliation from teachers and staff.

20. Within hours of submitting the complaint, Plaintiff was approached by those teachers that made the racially discriminatory comments, who demanded to know if Plaintiff had indeed complained of their conduct. These confrontations marked the beginning of a crusade of intimidation and retaliation by Defendant and their staff against Plaintiff.

21. Immediately after the complaint was filed, Jessica Watson (*see* paragraph 16 above) started and spread a rumor that Plaintiff had slept with one of the male professors. In addition, Ms. Watson began telling other teaching staff, students, and other employees of Defendant that Plaintiff was "framing her" for something she never said. Last, Ms. Watson assigned Plaintiff to bathroom cleaning duty on numerous days, consecutively, which was a departure from the normal procedure for assigning such duty. Plaintiff informed Kristen Kohl, Defendant's owner, of these acts of retaliation.

22. These actions resulted in the creation of a hostile work environment, in which Plaintiff was forced to learn and work. Consequently, Plaintiff was forced to miss several days of classes and work.

23. In an effort to work around a different group of people and thus reduce the hostility of her work environment, Plaintiff requested a schedule change. This request was denied, and no justification for the denial was provided by Defendant.

24. Plaintiff was approached on or about September 23, 2019, by Defendant's compliance coordinator. Plaintiff was told that in order for Defendant to perform any sort of investigation into

her complaint, she would first have to publicly name herself as the complainant. Having no other choice, Plaintiff did so on the next day, September 24, 2019.

25. During the course of Defendant's purported investigation, Defendant's staff and employees continuously circulated the rumors spread by Ms. Watson, and generally disparaged Plaintiff to other students and staff.

26. On October 15, 2019, Plaintiff attended a meeting with Defendant's compliance coordinator, who informed her that the investigation would be closed, and all concerns were addressed pursuant to company policy. No action was taken against any staff member.

27. In response, Plaintiff submitted an additional complaint, detailing Defendant's failure to act in the face of clear discrimination and retaliation. On November 13, 2019, an informal hearing was held on this matter.

28. During the hearing, Ms. Watson admitted to using the phrase "Niggers ain't shit," towards Plaintiff and another African-American student. Despite this admission, at the end of the hearing, no action was taken against Ms. Watson, or any other staff member of Defendant.

29. After no action was taken, Plaintiff filed complaints with the U.S. Department of Education Office of Civil Rights (on Oct. 15, 2019), and the Department of Justice's Education Discrimination Division (on Nov. 11, 2019).

30. On November 21, 2019, Plaintiff again requested a schedule change. She was told by Defendant that the only way to make an adjustment to her schedule was if she switched to their part-time program. Contemporaneously, Defendant allowed other, white students and employees to make schedule adjustments without having to switch to the part-time program.

31. On January 17, 2019, Plaintiff was told by Defendant that she could not use someone she knew for her "total look" project, which was a requirement for her graduation from the

cosmetology program. Contemporaneously, two other white students were allowed to use people they knew for their total look projects.

32. Last, throughout her employment with Defendant, Plaintiff was almost exclusively assigned to provide hair services to African-American customers, and therefore was denied the benefit of providing hair services to a diverse group of consumers.

33. Plaintiff has satisfied all conditions precedent, or they have been waived.

34. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

**COUNT I: RACE DISCRIMINATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT**

35. Plaintiff reincorporates and realleges all allegations contained within paragraphs 1-34 of this Complaint, as if set out fully herein.

36. Plaintiff was a member of a protected class within the meaning of the Title VI of the Civil Rights Act as an African-American woman.

37. Plaintiff was subjected to discrimination on the basis of race by the Defendant and their agents and employees, as specified in paragraphs 15-18, 24, 26, 28, 30, and 31 above.

38. Defendant is a participant in student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended, and accordingly is subject to Title VI of the Civil Rights Act's bar on racial discrimination.

39. As a result of Defendant's discriminatory acts against Plaintiff, she has suffered damages, including compensatory damages, emotional distress, mental anguish, and loss of capacity for the enjoyment of life.

40. Because Defendant's actions were willful and intentional, Defendant is also liable for punitive damages.

## COUNT II: RACE DISCRIMINATION UNDER TITLE VII OF
## THE CIVIL RIGHTS ACT

41. Plaintiff reincorporates and realleges all allegations contained within paragraphs 1-34 of this Complaint, as if set out fully herein.

42. Plaintiff was a member of a protected class within the meaning of Title VII of the Civil Rights Act as an African-American woman.

43. Plaintiff was subjected to multiple adverse employment actions during her employment with Defendant, including, but not limited to:

   a. Denial of her requests for schedule changes;

   b. Denial of her request to use someone known to her for her "total look" project, which was a necessary requirement for her graduation from Defendant's cosmetology program; and

   c. Being assigned bathroom cleaning duty on numerous, consecutive days, outside of the normal rotation of assigning such duties.

44. Defendant treated others similarly situated to Plaintiff, but who were Caucasian, in a more favorable manner. Specifically, Defendant allowed two white students the ability to use individuals they knew for their "total look" project, and routinely approved schedule changes for white students, all while denying the same rights to Plaintiff.

45. Plaintiff was equally qualified as those white students to receive the benefits requested and denied.

46. As a result of Defendant's discriminatory acts against Plaintiff, she has suffered damages, including compensatory damages, emotional distress, mental anguish, and loss of capacity for the enjoyment of life.

47. Because Defendant's actions were willful and intentional, Defendant is also liable for

punitive damages.

## COUNT III: HOSTILE WORK ENVIRONMENT BASED ON RACE

48. Plaintiff reincorporates and realleges all allegations contained within paragraphs 1-34 of this Complaint, as if set out fully herein.

49. Plaintiff was a member of a protected class within the meaning of Title VII of the Civil Rights Act as an African-American woman.

50. Plaintiff was subjected to unwelcome racial discrimination and harassment, during and throughout her employment with Defendant, as specified within this Complaint. All such harassment was based on Plaintiff's race.

51. The harassment experienced by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment, and there is a clear basis for holding the employer liable.

52. As a result of the racial discrimination and harassment experienced by Plaintiff, she has suffered damages, including compensatory damages, other pecuniary damages, emotional distress, mental anguish, and loss of capacity for the enjoyment of life.

53. Because Defendant's actions were willful and intentional, Defendant is liable for punitive damages.

## COUNT IV: RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT

54. Plaintiff reincorporates and realleges all allegations contained within paragraphs 1-34 of this Complaint, as if set out fully herein.

55. Plaintiff was a member of a protected class within the meaning of Title VII of the Civil Rights Act as an African-American woman.

56. Plaintiff engaged in statutorily protected expression in making her complaints of race

discrimination by Defendant's managers, instructors, and staff.

57. Plaintiff was subjected to multiple, material adverse employment actions, including:

    a.  Denial of her requests for schedule changes;

    b.  Denial of her request to use someone known to her for her "total look" project, which was a necessary requirement for her graduation from Defendant's cosmetology program;

    c.  Being assigned bathroom cleaning duty on numerous, consecutive days, outside of the normal rotation of assigning such duties; and

    d.  Being subjected to ridicule and embarrassment by Jessica Watson, through her spreading rumors regarding purported sexual activity between Plaintiff and a male instructor.

58. The above listed adverse actions were directly and proximately caused by Plaintiff's protected expression.

59. As a result of Defendant's retaliatory acts, Plaintiff has suffered damages, including compensatory damages, other pecuniary damages, emotional distress, mental anguish, and loss of capacity for the enjoyment of life.

60. Because Defendant's actions were willful and intentional, Defendant is liable for punitive damages.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

DATED this 3rd day of December, 2020.

Respectfully submitted:


/s/ Nicholas J. Castellano, II
Nicholas J. Castellano, II, Esq.
Florida Bar Number: 0118601
Email: nick@buckmanandbuckman.com

**BUCKMAN & BUCKMAN, P.A.**
2023 Constitution Boulevard
Sarasota, FL  34231
Telephone:    (941) 923-7700
Fax:              (941) 923-7736

*Attorneys for Plaintiff*